**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) THE BOARD OF COUNTY COMMISSIONERS OF DELAWARE COUNTY, STATE OF OKLAHOMA <br> Plaintiff, <br> v. | ) <br> ) <br> ) <br> ) <br> ) |
| (1) PURDE PHARMA L.P.; <br> (2) PURDUE PHARMA INC.; <br> (3) THE PURDUE FREDERICK COMPANY, INC.; <br> (4) TEVA PHARMACEUTICALS USA, INC.; <br> (5) CEPHALON INC.; <br> (5) JOHNSON & JOHNSON; <br> (6) JANSSEN PHARMACEUTICALS, INC.; <br> (7) ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. N/K/A JANSSEN PHARMACEUTICALS INC.; <br> (8) ENDO PHARMACEUTICALS, INC.; <br> (9) ALLERGAN PLC F/K/A ACTAVIS PLC; <br> (10) ACTAVIS, INC. F/K/A WATSON PHARMACEUTICALS, INC.; <br> (11) WATSON LABORATORIES, INC.; <br> (12) INSYS THERAPEUTIC, INC.; <br> (13) MALLINCKRODT LLC; <br> (14) ACTAVIS LLC; <br> (15) ACTAVIS PHARMA, INC. F/K/A WATSON PHARMA, INC.; <br> (16) ENDO HEALTH SOLUTIONS INC.; <br> (17) MCKESSON CORPORATION; <br> (18) CARDINAL HEALTH, INC.; <br> (19) AMERISOURCEBERGEN DRUG CORPORATION; <br> (20) CVS HEALTH CORPORATION; <br> (21) WALGREENS BOOTS ALLIANCE, INC. A/K/A WALGREEN CO.; <br> (22) WAL-MART INC. F/K/A WAL-MART STORES INC.; <br> (23) PERRY FINE; <br> (24) SCOTT FISHMAN; <br> (25) LYNN WEBSTER; <br> (26) DR. TAMERLANE ROZSA, M.D.; <br> (27) ROGER KINNEY, M.D.; <br> (28) JOSHUA LIVINGSTON, D.O.; <br> (29) JOSEPH KNIGHT, M.D.; <br> (30) CHRISTOPHER MOSES, D.O.,                 Defendants. | ) <br> ) Case No. 4:18-cv- <br> ) 00460-CVE-JFJ <br> ) <br> ) (Removal from: District <br> ) Court of Delaware <br> ) County, Case No. CJ- <br> ) 2018-00061) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT MCKESSON CORPORATION'S OPPOSITION TO**
**PLAINTIFF'S MOTION TO REMAND TO STATE COURT**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ....................................................................................................... 2

        A.    Plaintiff's Action. ......................................................................................... 2

        B.    The Multidistrict Litigation......................................................................... 4

III.    ARGUMENT ............................................................................................................ 5

        A.    Plaintiff's Petition Necessarily Raises Disputed and Substantial Issues of
              Federal Law. ................................................................................................. 5

              1.    The Petition "Necessarily Raises" a Federal Question. ............................. 7

              2.    The Parties "Actually Dispute" the Federal Issue.................................. 11

              3.    The Federal Issues Are "Substantial." ...................................................... 12

                    a.    There is a federal interest in ensuring uniform interpretation
                          of the CSA........................................................................................ 13

                    b.    The federal issues presented in this case have broad
                          significance for the federal government. ...................................... 15

                    c.    This case presents a nearly pure issue of law that would
                          have applications to other federal cases....................................... 16

              4.    Federal jurisdiction will not disrupt the Congressionally-approved
                    balance of federal-state judicial responsibilities. ...................................... 16

        B.    The Remand Decisions Cited by Plaintiff Are Distinguishable. ......................... 17

        C.    Abstention Principles Do Not Support Remand. .................................................. 18

        D.    The Court Should Defer Consideration of Plaintiff's Remand Motion. ............... 19

IV.     CONCLUSION......................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admin. Subpoena Walgreen Co. v. U.S. Drug Enf't Admin.*,
  913 F. Supp. 2d 243 (E.D. Va. 2012) .......................................................................16

*Archuleta v. Lacuesta*,
  131 F.3d 1359 (10th Cir. 1997) ...............................................................................18

*Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*,
  850 F.3d 714 (5th Cir. 2017) ...............................................................................13, 16

*Benjamin v. S.C. Elec. & Gas Co.*,
  2016 WL 3180100 (D.S.C. June 8, 2016)................................................................10

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005)............................................................................. *passim*

*Cardinal Health, Inc. v. Holder*,
  846 F. Supp. 2d 203 (D.D.C. 2012) .........................................................................16

*Caterpillar, Inc. v. Williams*,
  482 U.S. 386 (1987)................................................................................................7, 9

*Cherokee Nation v. McKesson Corp.*,
  No. 6:18-cv-00056 (E.D. Okla.) ................................................................................4

*City of Chicago v. Int'l Coll. of Surgeons*,
  522 U.S. 156 (1997).............................................................................................5, 11

*City of Jacksonville v. Purdue Pharma L.P.*,
  No. 3:18-cv-00751 (M.D. Fla. Aug. 22, 2018) .................................................20, 21

*City of Paterson v. Purdue Pharma L.P.*,
  No. 2:17-cv-13433 (D.N.J.) .....................................................................................20

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)..................................................................................................18

*Cty. of Hudson v. Purdue Pharma L.P.*,
  No. 2:18-cv-09029 (D.N.J.) .....................................................................................20

*Cty. of San Mateo v. McKesson Corporation*,
  No. 3:18-cv-04535 (N.D. Cal. Aug. 28, 2018), ECF No. 22 ...................................21

*Delaware v. Purdue Pharma L.P.*,
  No. 1:18-cv-383 (D. Del. Apr. 25, 2018).................................................................17

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005)...................................................................................................5

*FDIC v. Countrywide Fin. Corp.*,
  2011 WL 4372915 (D. Colo. Sept. 19, 2011).........................................................20

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S.*
  *California*,
  463 U.S. 1 (1983).....................................................................................................17

*Franklin v. Merck & Co. Inc.*,
  2007 WL 188264 (D. Colo. Jan. 24, 2007).............................................................20

*Parisi ex rel. Goldman v. Marsh & McLennan Cos.*,
  2004 WL 1534181 (D. Kan. Apr. 6, 2004).............................................................20

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
  545 U.S. 308 (2005)...................................................................................... *passim*

*Gunn v. Minton*,
  568 U.S. 251 (2013)...................................................................................... *passim*

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, NA*,
  824 F.3d 308 (2d Cir. 2016)............................................................................6, 7, 14

*Lehman v. City of Louisville*,
  967 F.2d 1474 (10th Cir. 1992) ..............................................................................19

*Little v. Pfizer, Inc.*,
  2014 WL 1569425 (N.D. Cal. Apr. 18, 2014) ........................................................19

*Lontz v. Tharp*,
  413 F.3d 435 (4th Cir. 2005) .....................................................................................7

*Masters Pharm., Inc. v. DEA*,
  861 F.3d 206 (D.C. Cir. 2017) ...............................................................................3, 7

*Merrell Dow Pharms. v. Thompson*,
  478 U.S. 804 (1986)....................................................................................................7

*Muscogee (Creek) Nation v. Purdue Pharma LP*,
  No. 4:18-cv-00180 (N.D. Okla.)................................................................................4

*N. Miss. Med. Ctr., Inc., v. McKesson Corp.*,
  No. 1:18-cv-00078 (N.D. Miss.)..............................................................................20

iii

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC,*
  770 F.3d 1010 (2d Cir. 2014) ........................................................................ *passim*

*In re Nat'l Prescription Opiate Litig.,*
  290 F. Supp. 3d 1375, 1378-79 (J.P.M.L. 2017) ........................................................4

*In re: Nat'l Prescription Opiate Litig.,*
  No. 1:17-md-02804 (N.D. Ohio Mar. 1, 2018), ECF No. 161 ...............................15

*In re National Prescription Opiate Litigation,*
  MDL No. 2804 (J.P.M.L.) .......................................................................................2

*New Hampshire v. Purdue Pharma,*
  No. 17-cv-427 (D.N.H. Jan. 9, 2018)......................................................................17

*New Mexico v. Purdue Pharma L.P.,*
  No. 18-cv-386 (D.N.M. June 12, 2018)...................................................................17

*New Mexico v. Volkswagen Grp. of Am., Inc.,*
  2016 WL 4072342 (D.N.M. Apr. 27, 2016) ...........................................................20

*PDK Labs. Inc. v. U.S. Drug Enf't Admin.,*
  362 F.3d 786 (D.C. Cir. 2004) ................................................................................16

*PNC Bank, N.A. v. PPL Elec. Utils. Corp.,*
  189 F. App'x 101 (3d Cir. 2006) ..............................................................................6

*Ponca Tribe of Indians of Okla. v. Purdue Pharma LP,*
  No. 5:18-cv-00221 (W.D. Okla.) ..............................................................................4

*Oklahoma ex rel. Pruitt v. EPA,*
  2015 WL 4607903 (N.D. Okla. July 31, 2015) ......................................................20

*Quackenbush v. Allstate Ins. Co.,*
  517 U.S. 706 (1996)................................................................................................18

*Ranck v. Mt. Hood Cable Regulatory Comm'n,*
  2017 WL 1752954 (D. Or. May 2, 2017) .................................................................6

*Torres v. Johnson & Johnson,*
  2014 WL 6910478 (D.N.M. Sept. 16, 2014) ..........................................................20

*Tucson Medical Center v. Purdue Pharma L.P.,*
  No. 4:18-cv-00481 (D. Ariz. Oct. 5, 2018), ECF No. 50 .......................................21

*V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.,*
  27 F.3d 911 (3d Cir. 1994).......................................................................................7

*Village of Melrose Park v. McKesson Corp.*,
  No. 1:18-cv-05288 (N.D. Ill. Aug. 10, 2018), ECF No. 26 ...................................................21

*Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State
  of Utah*,
  240 F.3d 871 (10th Cir. 2001) ...............................................................................................19

**Statutes**

21 U.S.C. § 801, *et seq.*..........................................................................................................1

21 U.S.C. § 882(a) ..................................................................................................................16

21 U.S.C. § 903 .......................................................................................................................15

28 U.S.C. § 1331 ...................................................................................................................1, 5

28 U.S.C. § 1331(a) ..................................................................................................................7

28 U.S.C. § 1441(a) ..................................................................................................................5

**Other Authorities**

21 C.F.R. § 1301.74(b) .........................................................................................................3, 7

H.R. Rep. No. 91-1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566 ........................................14

## I.    INTRODUCTION

McKesson Corporation removed this case because Delaware County ("Plaintiff") asserts claims that McKesson and other distributors of prescription opioids (collectively, "Distributors") breached legal duties arising under the federal Controlled Substances Act, 21 U.S.C. § 801, *et seq.* (the "CSA"). Plaintiff moves to remand this case to state court for lack of subject matter jurisdiction even though its claims against Distributors are predicated on alleged violations of those federal duties. Plaintiff's reliance on duties arising under federal law creates federal question jurisdiction under 28 U.S.C. § 1331.

This Court need not and should not reach the merits of Plaintiff's remand motion. Instead, for the reasons stated in Distributors' Motion to Stay (Dkt. No. 71), this Court should defer consideration of Plaintiff's remand motion and allow the issues presented in that motion to be decided on a national basis, alongside almost identical claims brought by other plaintiffs across the country as part of the national opioid litigation that has been consolidated by the Judicial Panel on Multidistrict Litigation ("JPML") for pre-trial purposes in the United States District Court for the Northern District of Ohio (the "MDL").

Were this Court to reach the merits of Plaintiff's remand motion, the Court should deny that motion. Federal jurisdiction is proper under the Supreme Court's four-part test set forth in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), and *Gunn v. Minton*, 568 U.S. 251 (2013).[1] Under that test, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed,

---

[1] Defendant Endo Health filed a Supplemental Notice of Removal, which provided separate and independent grounds for removal. Specifically, the Supplemental Notice asserts that certain defendants were fraudulently joined, and that without those fraudulently joined defendants, there is a complete diversity of parties. McKesson understands that Endo will file a separate opposition to Plaintiff's remand motion addressing the grounds for diversity jurisdiction raised in its Supplemental Notice.

(3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

All four factors are present here. *First*, Plaintiff's Petition necessarily raises federal issues. Plaintiff makes its reliance on the CSA clear by premising its claims against Distributors on alleged failures to report and halt "suspicious orders" for prescription opioids. The alleged duties to report and halt suspicious orders, however, arise out of the federal CSA. Plaintiff fails to cite any state law authority in its Petition setting forth a duty to halt suspicious orders. *Second*, the parties actually dispute the federal issues because they contest whether Distributors violated the CSA. *Third*, the federal issues are substantial given the federal interest in the CSA's nationwide regulatory scheme, which requires uniformity, and the federal government's asserted interest in the subject matter of this litigation. And *fourth*, federal jurisdiction will not upset any federal-state balance.

## II.     BACKGROUND[2]

### A.     Plaintiff's Action.

Plaintiff filed this lawsuit in Oklahoma state court on April 24 and filed a First Amended Petition on June 13. Dkt. No. 2 ¶¶ 1-2. The First Amended Petition identifies four discrete sets of defendants: (i) pharmaceutical manufacturers, which make and promote opioid medications; (ii) Distributors, which are pharmaceutical wholesale distributors; (iii) retail pharmacies, which fill prescriptions for opioids; and (iv) physicians, who prescribe opioids. *Id.* ¶¶3-7. The Petition asserts causes of action against Distributors for violations of the violations of the Oklahoma Consumer Protection Act (Count I); public nuisance (Count II); fraud (Count III); unjust

---

[2] "JPML Dkt." refers to the JPML's docket in *In re National Prescription Opiate Litigation*, MDL No. 2804 (J.P.M.L.), and "Dkt." refers to this Court's docket in this action.

enrichment (Count IV); negligence (Count V); negligent marketing (Count VI); and violation of the Oklahoma Racketeer Influenced and Corrupt Organizations Act (Count VII). *Id.* ¶ 9.

Plaintiff's central theory of liability against Distributors is that Distributors allegedly violated two duties aimed at preventing "diversion" of controlled substances: (1) a duty to report "suspicious orders" for controlled substances; and (2) a duty to halt shipments of suspicious orders. Indeed, Plaintiff's claims against Distributors rest on allegations that Distributors should have reported and refused to ship purportedly suspicious opioid orders from Oklahoma pharmacies. *See, e.g.*, Pet. ¶ 753 (Distributors "had a duty to notice suspicious or alarming orders of opioid pharmaceuticals and to report suspicious orders to the proper authorities and governing bodies including the DEA"); *id.* ¶ 758 (Distributors "displayed a continuing pattern of failing to submit suspicious order reports"); *id.* ¶ 766 (Distributors "continued to fail to report suspicious orders or prevent the flow of prescription opioids, including into Delaware County").

The two alleged duties on which Plaintiff's claims rest—the duties to report and refuse to ship suspicious opioid orders—arise out of the federal CSA and its implementing regulations. The alleged reporting duty is set forth in the CSA's implementing regulations. *See* 21 C.F.R. § 1301.74(b) (duty to monitor and report suspicious orders of controlled substances). The alleged shipment-halting duty likewise arises out of the Drug Enforcement Administration's ("DEA") interpretation of the CSA, pursuant to which Distributors must "decline to ship" suspicious orders for controlled substances. *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,500-501, 2007 WL 1886484 (DEA July 3, 2007), as the source of DEA's "Shipping Requirement").

The Petition therefore alleges that Distributors violated federal duties arising under the CSA and related DEA regulations. Plaintiff itself makes this clear by relying on federal law in

the Petition to establish the alleged duties to report and halt shipments of suspicious orders for controlled substances. *See, e.g.*, Pet. ¶¶ 11 n.4, 146, 779-83. Plaintiff likewise fails to specifically identify a state law source for any alleged requirement to identify, report, and halt suspicious orders for prescription opioids.[3] Accordingly, Plaintiff's perfunctory invocation of state law does not support any cause of action that depends on Distributors' alleged over-distribution of opioids into Oklahoma.

**B.      The Multidistrict Litigation.**

Not only does Plaintiff base its claims on federal law, its claims are the same as those already being asserted in federal court by hundreds of other municipalities and other plaintiffs against opioid manufacturers, distributors, and pharmacies. To consolidate these cases for coordinated pre-trial proceedings, the JPML formed an MDL in the Northern District of Ohio. *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378-79 (J.P.M.L. 2017). In total, more than 1,150 actions are now pending in the MDL, including actions originally filed in or removed to district courts in Oklahoma.[4] As new cases are filed across the country each week, the JPML continues—and will continue—to transfer more actions to the MDL.

Upon removal, a notice was filed with the JPML tagging this case for potential transfer to the MDL. *See* JPML Dkt. No. 2459. Based on that notice, the JPML issued an order indicating that this case should be transferred to the MDL on the ground that it appears to "involve

---

[3]  Although Plaintiff alleges in passing that "Defendants violated the Oklahoma law and regulations for manufacturers and distributors, by failing to properly report suspicious orders," Pet. ¶ 776, Plaintiff fails to specifically cite state law provisions giving rise to such requirements and instead principally relies on alleged violations of federal law to establish its claims.

[4]  *See, e.g.*, *Cherokee Nation v. McKesson Corp.*, No. 6:18-cv-00056 (E.D. Okla.) (removed to federal court and transferred to MDL); *Ponca Tribe of Indians of Okla. v. Purdue Pharma LP*, No. 5:18-cv-00221 (W.D. Okla.) (filed in federal court and transferred to MDL); *Muscogee (Creek) Nation v. Purdue Pharma LP*, No. 4:18-cv-00180 (N.D. Okla.) (same).

questions of fact that are common to the actions previously transferred to the Northern District of Ohio and assigned to Judge Polster." Conditional Transfer Order, JPML Dkt. No. 2529 (attached as **Exhibit 1**).

Thereafter, Plaintiff filed an opposition to transfer with the JPML. JPML Dkt. No. 2621. As a result, the JPML automatically stayed its conditional order and issued a briefing schedule. JPML Dkt. No. 2631. Briefing on transfer will conclude on November 2, 2018, and McKesson anticipates that the JPML will make a final transfer decision shortly after its hearing on November 29, 2018, or the next available hearing after that.[5]

### III.    ARGUMENT

Given Plaintiff's reliance on duties arising under federal law, federal question jurisdiction is proper. Although Plaintiff purports to assert state law causes of actions, its claims are predicated on alleged violations of the CSA. Accordingly, those claims necessarily raise substantial federal issues that should be resolved in federal court. Because this case presents federal issues, Plaintiff's motion to remand should be denied.

### A.    Plaintiff's Petition Necessarily Raises Disputed and Substantial Issues of Federal Law.

Federal district courts have removal jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a), and original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331. "A single claim over which federal-question jurisdiction exists is sufficient to allow removal." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005); *see Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 563 (2005); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–66 (1997).

---

[5] *See* http://www.jpml.uscourts.gov/hearing-information.

Even where state law creates the asserted causes of action, they may raise federal issues sufficient to warrant removal jurisdiction. Under the Supreme Court's *Grable* and *Gunn* decisions, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see also Grable*, 545 U.S. at 315. "Where all four of these requirements are met . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quotation marks omitted).

Courts have found these factors to be satisfied in cases where state law claims are predicated on violations of federal statutes governing complex, nationwide regulatory schemes for which uniformity is essential. *See, e.g.*, *PNC Bank, N.A. v. PPL Elec. Utils. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, NA*, 824 F.3d 308, 315–18 (2d Cir. 2016) (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

This case, too, satisfies all four elements of *Grable* and *Gunn*.

**1.     The Petition "Necessarily Raises" a Federal Question.**

An action "necessarily raises" a federal question when "the right to relief depends upon the construction or application of federal law." *PNC Bank*, 189 F. App'x at 104 n.3. Significantly, "an action under 28 U.S.C. § 1331(a) arises . . . *if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles." *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) (emphasis added); *see also Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 808–09 (1986) (federal question jurisdiction exists if "vindication of a right under state law *necessarily turn*[*s*] *on some construction of federal law*" (emphasis added, internal citation omitted)).

In determining whether state law claims turn on construction or application of federal law, the Court must "begin by considering the duty underlying each claim." *NASDAQ*, 770 F.3d at 1020. "A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law," *Jacobson*, 824 F.3d at 315, or where the "singular duty" underlying the claim arises under federal law, *NASDAQ*, 770 F.3d at 1021.

Here, Plaintiff's claims necessarily raise federal issues because they are expressly premised on Distributors' alleged violations of alleged legal duties that arise out of the CSA and its implementing regulations—*i.e.*, the duties to report and halt suspicious orders for controlled substances. *See* 21 C.F.R. § 1301.74(b) (setting forth reporting requirement); *Masters Pharm*, 861 F.3d at 212-13 (discussing shipping requirement).

Despite its protestations to the contrary, Plaintiff's reliance on federal law is evident on the face of the Petition. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (federal jurisdiction exists when federal question is presented "on the face of the plaintiff's properly

pleaded complaint"); *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005) (removal "is appropriate if the face of the complaint raises a federal question").

Throughout the Petition, Plaintiff cites to federal laws and regulations to establish the duties to report and halt suspicious orders, and repeatedly pleads that Distributors' alleged violations of these duties give rise to Plaintiff's causes of action. For example:

- "Due to concerns about their addictive properties, opioids have been regulated at the federal level as controlled substances by the U.S. Drug Enforcement Administration ('DEA') since 1970. The labels for scheduled opioid drugs carry black box warnings of potential addiction and '[s]erious, life-threatening, or fatal respiratory depression,' as the result of an excessive dose." Pet. ¶ 146.

- "Between the years in question, including 2007 through 2016, the Distributor Defendants have shipped millions of highly addictive controlled opioid pain killers into Delaware County. Many of these orders should have been stopped, or at the very least, investigated as potential suspicious orders." Pet. ¶¶768-69.

- "Upon information and belief, the Defendants did not refuse to manufacture, ship, or supply any opioid medications to any pharmacy in Delaware County from 2007 to present." Pet. ¶ 772.

- "The DEA sent a letter to each of the Defendant Distributors on September 26, 2006, warning that it would use its authority to revoke and suspend registrations when appropriate. The letter expressly states that a distributor, in addition to reporting suspicious orders, has a 'statutory responsibility to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate medical, scientific, and industrial channels.' The DEA warns that 'even just one distributor that

uses its DEA registration to facilitate diversion can cause enormous harm.'" Pet. ¶ 781.

- "As a result of the decade-long refusal by the Defendant Distributors to abide by federal law, the DEA has repeatedly taken administrative action to force compliance." Pet. ¶ 783.

As these and other examples demonstrate, Plaintiff's claims against Distributors rest squarely on its allegations that Distributors breached duties arising out of the CSA and its implementing regulations. Far from merely "mention[ing]" the CSA, Remand Mot. at 5, Plaintiff's invocation of the CSA undergirds its entire theory of liability against Distributors.

Although a plaintiff "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar*, 482 U.S. at 392 (emphasis added), Plaintiff here relies primarily on federal law. In its allegations against Distributor Defendants, Plaintiff does not specifically cite any state law authority that requires wholesale distributors to report or halt shipments of suspicious orders for controlled substances.[6] To the contrary, Plaintiff relies on federal law in support of those duties. *See, e.g.*, *id.* ¶¶ 146, 781-83. Thus, to prevail on its claims as pled, Plaintiff would have to establish that Distributors breached alleged duties that arise under federal law.

Plaintiff's claim for public nuisance (Count II) illustrates the point. As to Distributors, Plaintiff's sole theory of nuisance-creating conduct is that Distributors "intentionally, recklessly, or negligently engaged in conduct or omissions which endanger or injure the property, health, safety or comfort of a considerable number of persons in Delaware County." Pet. ¶ 883. But the only allegedly reckless or negligent conduct that Plaintiff elsewhere attributes to Distributor

---

[6] Plaintiff cites Oklahoma Statutes Title 63 2-309 as the source of an alleged duty to maintain records of transactions involving prescription opioids. Pet. ¶ 747. But that provision simply states that controlled substances may not be dispensed without a valid prescription. Okla. Stat. Ann. tit. 63, § 2-309.

Defendants is their alleged failure to report or halt shipments of suspicious orders. As noted, the alleged duties to report and halt suspicious orders arise out of the federal CSA and its implementing regulations, and Plaintiff fails to specifically cite any analogous state law to support either duty. Thus, to establish its public nuisance claim *as pled*, Plaintiff must show that that Distributors violated the CSA and the claim necessarily raises a federal issue.

The same holds true of Plaintiff's negligence claim (Count V). In pleading negligence, Plaintiff alleges that Distributors "have a duty to exercise reasonable care in the distribution of opioids" and that they "breached this duty by failing to take any action to prevent or reduce the distribution of opioids." Pet. ¶¶ 901-02. And as noted, the alleged duty to "prevent" or "avoid filling" shipments of suspicious orders arises under the federal CSA. Thus, to establish negligence as plead, Plaintiff must again show that Distributors violated federal law. *See Benjamin v. S.C. Elec. & Gas Co.*, 2016 WL 3180100, at *5 (D.S.C. June 8, 2016) ("While Plaintiffs' allegations of negligence appear on their face to not reference federal law, federal issues are cognizable as the source for the duty of care resulting from [the defendant's conduct].").

In short, Plaintiff's state law causes of action hinge on its allegations that Distributors breached duties arising out of the CSA and its implementing regulations. To determine whether Distributors breached those duties, a court would necessarily have to interpret and apply the CSA. Plaintiff's claims therefore necessarily raise federal issues.

Significantly, in its remand motion, Plaintiff does not dispute that its claims are predicated on allegations that Distributors breached duties arising under the CSA. Nor does Plaintiff specifically cite any state law provisions that give rise to an independent obligation to report and halt suspicious orders. Thus, Plaintiff's allegations that Distributors failed to halt

suspicious orders necessarily raise a federal issue. Plaintiff cannot repeatedly allege violations of federal law in its Petition and remand motion, and then contend that it has not raised a federal question.

Plaintiff's sole argument that its Petition does not necessarily raise a federal question, which spans all of two sentences, is that claims "partially predicated on federal law" do not necessarily raise federal issues. Remand Mot. at 5. As noted, however, Plaintiff does not just *partially* predicate its claims on federal law; Plaintiff *exclusively* predicates its claims on duties it traces to federal law and fails to cite any Oklahoma law that gives rise to an independent obligation to report or halt suspicious orders.

Moreover, even if Plaintiff could prove some of its claims against Distributors without establishing violations of federal law, this Court still has jurisdiction because "[a] single claim over which federal-question jurisdiction exists is sufficient to allow removal" of the entire action. *Broder*, 418 F.3d at 194; *see City of Chicago*, 522 U.S. at 166 ("Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'"). Because at least some of Plaintiff's causes of action turn on a showing that Distributors violated the CSA and federal regulations, federal question jurisdiction exists.[7]

## 2.   The Parties "Actually Dispute" the Federal Issue.

The federal issues raised by the Petition are "actually disputed" because the parties contest whether the CSA and its implementing regulations in fact give rise to duties to report and halt suspicious orders for prescription opioids, the precise scope and contours of any such duties

---

[7] Plaintiff also incorrectly suggests that McKesson's removal was based on federal preemption. Remand Mot. at 4-5. Plaintiff is simply mistaken. McKesson's notice of removal does not mention, discuss, or implicate federal preemption, and there is no requirement that federal jurisdiction requires total preemption.

that might exist under the CSA, and whether Distributors violated these alleged duties by failing to report and halt suspicious orders. Indeed, because Plaintiff's claims against Distributors depend on their theory that Distributors breached these alleged duties, this issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

This dispute also presents a nearly pure question of law. In assessing whether Distributors breached duties arising out of the CSA, the Court must determine not only Distributors' conduct, but also whether that conduct falls within the scope of the CSA and any alleged duties arising under the CSA. That is, the Court must examine "the contours of [the] federal duty," "the scope of that duty," and "whether [Distributors' conduct] amounted to a breach of that duty." *NASDAQ*, 770 F.3d. at 1023. That analysis will require the Court to determine whether the CSA and its implementing regulations in fact give rise to the duties to report and halt suspicious orders, what any such duties entail, what constitutes a "suspicious" delivery under the CSA's implementing regulations, what actions should have been taken to resolve those suspicions or "halt" the shipment, whether existing processes satisfy federal reporting guidelines, and other disputes arising under federal regulations.

Given these live disputes about the existence and scope of Distributors' duties under the CSA, Plaintiff cannot credibly maintain, as it asserts in its remand motion, that no federal issue is actually disputed. Remand Mot. at 5. Distributors deny that the alleged duties under the CSA are as broad in scope as Plaintiff alleges they are and Distributors deny that they violated their duties under the CSA in the manner alleged in Plaintiff's Petition. Unless Plaintiff is willing to concede both points, then the federal issue is actually disputed.

### 3.    The Federal Issues Are "Substantial."

The Supreme Court has explained that "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. A

federal issue "can be important for many reasons," including because (i) "state adjudication would undermine the development of a uniform body of federal law"; (ii) "resolution of the issue has broad significance for the federal government"; or (iii) "the case presents a nearly pure issue of law that would have applications to other federal cases." *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 724 (5th Cir. 2017). Exercising federal-question jurisdiction in such cases "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

The federal issues presented here are important to the federal system as a whole because there is a strong federal interest in ensuring a uniform interpretation of the CSA. The scope of the obligations the CSA places on distributors of pharmaceuticals—e.g., whether and to what extent it requires distributors to halt "suspicious" orders—is a nearly pure legal question that has broad significance to the federal government, including by affecting the DEA's ability to enforce the CSA, and methods for enforcing it. Moreover, the resolution of this legal issue will have application not only in this case, or even in the hundreds of opioid-related actions pending in the MDL, but will apply broadly to all cases in which a plaintiff alleges that any distributor of pharmaceuticals breached its alleged duties to report or halt shipments of suspicious orders.

### a. There is a federal interest in ensuring uniform interpretation of the CSA.

Courts have often found federal issues to be sufficiently substantial where they raise "questions [that] involve aspects of . . . complex federal regulatory scheme[s] . . . as to which there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Broder*, 418 F.3d at 195 (quotation marks omitted). Such rulings are especially common

where, as here, federal agencies are responsible for implementing a national regulatory system for which uniformity is essential. In *NASDAQ*, for example, the Second Circuit ruled that "the disputed federal issue in th[e] case—whether [the defendant] violated its Exchange Act obligation to provide a fair and orderly market in conducting an IPO—is sufficiently significant to the development of a uniform body of federal securities regulation to satisfy the requirement of importance to the federal system as a whole." 770 F.3d at 1024. Likewise, in *Jacobson*, the Second Circuit held that "minimizing uncertainty over the tax treatment of mortgage-backed securities, as Congress intended, fully justif[ied] resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 824 F.3d at 318.

Similarly, Plaintiff's claims would require a court to determine the existence and scope of Distributors' obligations under the CSA and whether Distributors breached those duties, implicating the uniformity concerns addressed above. In enacting the CSA, Congress stated that it was "providing the legitimate drug industry with a *unified* approach to narcotic and dangerous drug control." H.R. Rep. No. 91-1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4572 (emphasis added). Plaintiff's claims thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder*, 418 F.3d at 195, and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ*, 770 F.3d at 1024. Furthermore, "minimizing uncertainty over" reporting and shipping obligations under the CSA "justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Jacobson*, 824 F.3d at 317–18.

Resort to a federal forum is particularly warranted here because Plaintiff's action is but one of more than a thousand cases pending in the MDL. If this case is allowed to proceed in

federal court and transferred to the MDL, the MDL court will be able to ensure uniform construction and application of the CSA and any alleged duties arising under the CSA, thus achieving Congress's goal of a "unified approach" to regulating controlled substances. If, on the other hand, this case were remanded to the state court, nothing would prevent that court from construing and applying federal CSA obligations in a manner inconsistent with the MDL court and with federal policy generally.

> **b.** The federal issues presented in this case have broad significance for the federal government.

The federal government has made clear the effect that the opioid litigation will have on its ability to enforce the CSA. Most notably, the Department of Justice filed a Statement of Interest on behalf of the United States in the MDL proceedings, asserting the federal government's interests in, among other things, its "law enforcement and legal activities in conjunction . . . with the multidistrict litigation," specifically including "[c]riminal and civil tools available *under the Controlled Substances Act*." *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio Mar. 1, 2018), ECF No. 161, at 7 (attached as **Exhibit 2**) (emphasis added).

Allowing state courts to resolve claims premised the CSA—and to determine the existence and scope of any duties under the CSA—creates the potential for inconsistent interpretations of the CSA across jurisdictions. *See* 21 U.S.C. § 903 (although Congress did not intend to "occupy the field" of controlled substances regulation with CSA, it pre-empts inconsistent state law). Allowing state courts to issue conflicting interpretations of the CSA would inevitably undermine the federal government's efforts to enforce the statute and sow confusion among federally regulated entities.

> **c.** This case presents a nearly pure issue of law that would have applications to other federal cases.

As noted, this case would require a court to determine the existence of duties arising under the CSA, the scope and contour of any such duties that exist, and "whether [Distributors' conduct] amounted to a breach of that duty." *NASDAQ*, 770 F.3d. at 1023. These questions present "nearly pure issue[s] of law" that would necessarily "have applications to other federal cases." *Tenn. Gas Pipeline*, 850 F.3d at 724. Indeed, these issues apply to the hundreds of actions pending in the MDL.[8]

### 4. Federal jurisdiction will not disrupt the Congressionally-approved balance of federal-state judicial responsibilities.

Finally, Plaintiff does not contest—and thus effectively concedes—that the federal issues presented by the Petition are capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the federal CSA against distributors.[9] Similarly, federal courts have exclusive jurisdiction over proceedings seeking to enjoin violations of the CSA. *See* 21 U.S.C. § 882(a) ("The district courts of the United States and all courts exercising general jurisdiction in the territories and possessions of the United States shall have jurisdiction

---

[8] It bears emphasis that the lack of a federal cause of action does *not* render federal jurisdiction lacking. In *Grable*, the Supreme Court specifically held that lack of a federal cause of action does *not* foreclose federal-question jurisdiction, and found that the federal issue presented in that case was sufficiently substantial notwithstanding the lack of a federal cause of action. *See Broder*, 418 F.3d at 196 ("The *Grable* Court found this last requirement to be satisfied even in the absence of a private right of action[.]"). Thus, the fact that the CSA does not afford Plaintiff a private right of action does not diminish the substantiality of the federal questions here, particularly when federal courts have exclusive jurisdiction to enforce the CSA.

[9] *See, e.g.*, *PDK Labs. Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786 (D.C. Cir. 2004) (challenge to DEA program enforcing CSA to prevent diversion of ephedrine); *Admin. Subpoena Walgreen Co. v. U.S. Drug Enf't Admin.*, 913 F. Supp. 2d 243 (E.D. Va. 2012) (resolving registrant's motion to require DEA to return subpoenaed documents); *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203 (D.D.C. 2012) (challenge under Administrative Procedure Act to DEA order suspending registration of distribution facility).

in proceedings . . . to enjoin violations of this subchapter."). Thus, federal courts are already the exclusive fora for determining the permissible scope of restraints on Distributors under the federal CSA. Plaintiff's Petition presents these precise questions.

In addition, as explained above, allowing cases like this one to proceed in federal court promotes uniform development of federal law. By contrast, litigating this case in state court would run the risk of the state court applying federal requirements inconsistently with the manner in which DEA—the federal agency responsible for enforcing the CSA—applies them.

**B.    The Remand Decisions Cited by Plaintiff Are Distinguishable.**

Recognizing that it cannot succeed on its claims without invoking federal law, Plaintiff attempts to distract from the weaknesses of its remand motion by citing remand decisions from opioid-related cases in other jurisdictions. Remand Mot. at 2.

These unpublished, nonbinding, and inapposite district court decisions do not alter the analysis here. To begin with, a number of the cases cited by Plaintiff involved actions brought by state attorneys general. *See New Mexico v. Purdue Pharma L.P.*, No. 18-cv-386 (D.N.M. June 12, 2018); *Delaware v. Purdue Pharma L.P.*, No. 1:18-cv-383 (D. Del. Apr. 25, 2018). Principles of comity thus militated in favor of the states' choice of forum. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 22 n.22 (1983) ("[C]onsiderations of comity make us reluctant to snatch cases which a State has brought from the courts of that State . . . ."). One of the cases involved federal question premised on an entirely different federal statute, not the CSA. *See New Hampshire v. Purdue Pharma*, No. 17-cv-427 (D.N.H. Jan. 9, 2018).[10]

---

[10] Plaintiff also states in passing that "all Defendants stipulated they would not remove the case." Remand Mot. at 2. Plaintiff is mistaken. McKesson did not agree or represent in any form that it would not remove this action, and McKesson is not aware of any other defendant making such an agreement.

Moreover, the cases Plaintiff cites all involved allegations of state-law statutory violations not present in this case. The plaintiff in each of those cases alleged that the defendant had violated duties arising not only out of the federal CSA, but also out of the uniform controlled substances act specific to the state in which the case was filed. By contrast, Plaintiff relies exclusively on alleged violations of the federal CSA and does not specifically cite parallel state-law statutory requirements to support its allegations that Distributors breached legal duties to report and halt suspicious orders.

Finally, the decisions cited by Plaintiff fundamentally understate the critical importance of the CSA to the federal Government. The *New Mexico* decision, for instance, posited that judicial interpretations of the CSA did not implicate "large-scale federal interests," despite the fact that the federal Government has specifically expressed that it has such an interest in actions that bear directly on the its ability to enforce its nationwide regulatory scheme for controlled substances. *See* Statement of Interest at 7.

## C.      Abstention Principles Do Not Support Remand.

Plaintiff's argument that abstention provides a basis for remand is likewise off base. *See* Remand Mot. at 6-7. Abstention does not provide a valid basis for remand where, as here, the action is for damages. As the Supreme Court has explained, "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996). Remand is "unwarranted" in "a damages action." *Id.*; *see also Archuleta v. Lacuesta*, 131 F.3d 1359, 1368 (10th Cir. 1997) (citing *Quackenbush* and noting that abstention doctrine "provide[s] no basis for remanding an otherwise properly removed action for damages").

Further, abstention principles do not apply to this case. Federal courts have the "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water*

18

*Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). No "exceptional circumstances" justify "[a]bdication of th[is] obligation" here. *Id.* at 813.

The *Younger* abstention doctrine provides that "federal courts should not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings— when a state forum provides an adequate avenue for relief." *Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State of Utah*, 240 F.3d 871, 875 (10th Cir. 2001) (quotation marks omitted). *Younger* abstention thus does not apply here because Plaintiff seeks primarily monetary relief premised on alleged violations of federal law.

*Burford* abstention applies only if "a federal district court faces issues that involve complicated state regulatory schemes." *Lehman v. City of Louisville*, 967 F.2d 1474, 1478 (10th Cir. 1992). Here, the Court faces no such complicated state regulatory scheme.

**D.     The Court Should Defer Consideration of Plaintiff's Remand Motion.**

Although the Petition necessarily raises substantial federal issues, the Court may and should defer ruling on Plaintiff's remand motion altogether. As Distributors further explain in their motion to stay these proceedings (Dkt. No. 71), although federal jurisdiction is proper here, delaying consideration of Plaintiff's remand motion until the JPML makes a final transfer decision will promote judicial efficiency and ensure consistent remand rulings by allowing the MDL court in the Northern District of Ohio to consider this and all other remand motions presenting similar issues.

"[C]ourts have repeatedly noted that the 'general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [JPML] has transferred the case.'" *Little v. Pfizer, Inc.*, 2014 WL 1569425, at *3 (N.D. Cal. Apr. 18, 2014). This is so because deferring consideration of a remand motion promotes judicial economy. If the JPML

transfers the case, the MDL judge can rule on Plaintiff's remand motion in conjunction with all other remand motions presenting the same jurisdictional issue, in addition to all other pretrial matters, thereby preserving judicial resources, ensuring consistent decisions, and avoiding the risk of inconsistent litigation. For these reasons, courts in the Tenth Circuit routinely stay proceedings and defer consideration of remand motions in cases that will potentially transfer to an MDL. *See Oklahoma ex rel. Pruitt v. EPA*, 2015 WL 4607903, at *2 (N.D. Okla. July 31, 2015) ("As a general rule, courts frequently grant stays pending a decision by the MDL panel regarding whether to transfer a case."); *see also New Mexico v. Volkswagen Grp. of Am., Inc.*, 2016 WL 4072342, at *2 (D.N.M. Apr. 27, 2016) (staying case and deferring consideration of remand motion pending JPML transfer decision); *Torres v. Johnson & Johnson*, 2014 WL 6910478, at *3 (D.N.M. Sept. 16, 2014) (same); *FDIC v. Countrywide Fin. Corp.*, 2011 WL 4372915, at *3 (D. Colo. Sept. 19, 2011) (same); *Franklin v. Merck & Co. Inc.*, 2007 WL 188264, at *3 (D. Colo. Jan. 24, 2007) (same); *Parisi ex rel. Goldman v. Marsh & McLennan Cos.*, 2004 WL 1534181, at *2 (D. Kan. Apr. 6, 2004) (same).

Here, deferring consideration of Plaintiff's remand motion is especially appropriate because the jurisdictional issue presented in this case—i.e., whether state law causes of action predicated on alleged breaches of duties arising under the CSA—has arisen in other actions that the JPML has transferred to the MDL. *See, e.g.*, *City of Paterson v. Purdue Pharma L.P.*, No. 2:17-cv-13433 (D.N.J.) (removed based on state law causes of actions premised on violations of federal CSA and implementing regulations, and transferred to MDL despite pending remand motion); *Cty. of Hudson v. Purdue Pharma L.P.*, No. 2:18-cv-09029 (D.N.J.) (same); *N. Miss. Med. Ctr., Inc., v. McKesson Corp.*, No. 1:18-cv-00078 (N.D. Miss.) (same);

*City of Jacksonville v. Purdue Pharma L.P.*, No. 3:18-cv-00751 (M.D. Fla. Aug. 22, 2018) (same).

As Distributors explain in their motion to stay, many district courts in other jurisdictions have stayed proceedings or otherwise deferred consideration of pending remand motions presenting precisely the same jurisdictional issue as Plaintiff's remand motion, so that the JPML may first decide whether to transfer the action to the MDL. *See, e.g.*, *Cty. of San Mateo v. McKesson Corporation*, No. 3:18-cv-04535 (N.D. Cal. Aug. 28, 2018) (staying proceedings in opioid-related action removed on federal question grounds pending MDL transfer decision), ECF No. 22; *City of Jacksonville v. Purdue Pharma L.P.*, No. 3:18-cv-00751 (M.D. Fla. Aug. 22, 2018), ECF No. 43 (deferring consideration of remand motion in opioid-related action removed on federal question grounds pending MDL transfer decision); *Village of Melrose Park v. McKesson Corp.*, No. 1:18-cv-05288 (N.D. Ill. Aug. 10, 2018), ECF No. 26 (staying proceedings in opioid-related action removed on federal question grounds pending MDL transfer decision); *Tucson Medical Center v. Purdue Pharma L.P.*, No. 4:18-cv-00481 (D. Ariz. Oct. 5, 2018), ECF No. 50 (staying proceedings in opioid-related action removed on federal question and federal officer grounds pending MDL transfer decision).

Therefore, in the interests of promoting judicial economy and consistency of rulings, this Court should defer consideration of Plaintiff's motion and instead allow the MDL Court to address it along with the others.

## IV.   CONCLUSION

For the reasons set forth above, McKesson respectfully request the Court deny Plaintiff's motion to remand.

October 10, 2018                                      */s/ Stuart D. Campbell*

Stuart D. Campbell, OBA #11246
Kaylee Davis-Maddy, OBA #31534
DOERNER, SAUNDERS, DANIEL
& ANDERSON, L.L.P.
700 Williams Center Tower II
Two West Second Street
Tulsa, Oklahoma 74103-3522
Telephone 918-582-1211
Facsimile 918-591-5360
scampbell@dsda.com
kmaddy@dsda.com

*Attorneys for McKesson Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the following parties are being served with a copy of this document on October 10, 2018, in accordance with the Federal Rules via CM/ECF or via mail, postage pre-paid:

George Gibbs
Gibbs Armstrong Borochoff, P.C.
601 South Boulder Avenue, Suite 500
Tulsa, OK  74119
ggibbs@gablawyers.com
and
(to be admitted pro hac vice)
Hunter J. Shkolnik
Shayna E. Sacks
Joseph L. Ciaccio
NAPOLI SHKOLNIK PLLC
400 Broadhollow Road – Suite 350
Melville, NY  11747
Telephone (212) 397-1000
Facsimile (646) 843-7603
hunter@napolilaw.com
jciaccio@napolilaw.com
ssacks@napolilaw.com

*Attorneys for Plaintiff*
_____
Robert G. McCampbell, OBA No, 10390
Ashley E. Quinn
Nicholas V. Merkley
GABLEGOTWALS
One Leadership Square, 15th Floor
211 North Robinson
Oklahoma City, OK 73102-7255
T: 405.235.5567
RMcCampbell@Gablelaw.com
aquinn@gablelaw.com
nmerkley@gablelaw.com
and
Harvey Bartle, IV*
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, New Jersey 08540-6241
T: (609) 919-6685
F: (609) 919-6701

Ray E. Zschiesche
PHILLIPS MURRAH
101 N. Robinson Ave.
Oklahoma City, OK 73102
(405) 235-4100
rezschiesche@phillipsmurrah.com
and
John Lombardo*
Tiffany Ikeda*
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street
44th Floor
Los Angeles, CA 90017
(213) 243-4000
John.Lombardo@arnoldporter.com
Tiffany.Ikeda@arnoldporter.com

*Attorneys for Endo Pharmaceuticals, Inc. and Endo Health Solutions Inc.*
_____
G. Calvin Sharpe, OBA No. 11702
Amy D. White, OBA No. 19255
PHILLIPS MURRAH P.C.
Corporate Tower, Thirteenth Floor
101 North Robinson Avenue
Oklahoma City, Oklahoma 73102
(405) 235-4100 (t)
(405) 235-4133 (f)
gcsharpe@phillipsmurrah.com
adwhite@phillipsmurrah.com
and
Conor B. O'Croinin*
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 949-1160
cocroinin@zuckerman.com

*\* denotes national counsel who will seek pro*

harvey.bartle@morganlewis.com
and
Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
T: 215.963.5000
F: 215.963.5001
steven.reed@morganlewis.com
and
Brian M. Ercole*
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
T: 305.415.3000
F: 305.415.3001
brian.ercole@morganlewis.com

*denotes national counsel who will seek pro
hac vice admission*

Counsel for Teva Pharmaceuticals USA, Inc.;
Cephalon, Inc.; Watson Laboratories, Inc.;
Actavis LLC; and Actavis Pharma, Inc. f/k/a
Watson Pharma, Inc.

_____

Mark Cheffo*
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
Mark.Cheffo@dechert.com
and
Sanford C. Coats
Cullen D. Sweeney
Crowe & Dunlevy, P.C.
Braniff Building, Suite 100
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102
Sandy.coats@crowedunlevy.com
Cullen.sweeney@crowedunlevy.com

*denotes national counsel who will seek pro
hac vice admission*

hac vice admission

Attorneys for Defendant CVS Health
Corporation

_____

Rocky C. Tsai*
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, California 94111-4006
Telephone: (415) 315-6300
Fax: (415) 315-6350
and
Jennifer Pantina*
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7320

*denotes national counsel who will seek pro
hac vice admission*

Counsel for Mallinckrodt LLC

_____

D. Michael McBride III, OBA #15431
Susan E. Huntsman, OBA #18401
CROWE & DUNLEVY
A Professional Corporation
500 Kennedy Building
321 S. Boston Ave.
Tulsa, OK 74103-3313
Telephone:  (918) 592-9800
mike.mcbride@crowedunlevy.com
susan.huntsman@crowedunlevy.com

Attorneys for AmerisourceBergen Drug
Corporation

_____

Ryan A. Ray, OBA #22281
NORMAN WOHLGEMUTH CHANDLER
JETER BARNETT & RAY, P.C.
2900 Mid-Continent Tower
401 South Boston Avenue
Tulsa, Oklahoma 74103
rar@nwcjlaw.com

Attorneys for Cardinal Health, Inc.

*Attorneys for Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company, Inc.*

_____

Benjamin H. Odom, OBA No. 10917
John H. Sparks, OBA No. 15661
Michael W. Ridgeway, OBA No. 15657
David L. Kinney, OBA No. 10875
Benjamin H. Odom
John H. Sparks
Michael W. Ridgeway
ODOM, SPARKS & JONES PLLC
HiPoint Office Building
2500 McGee Drive Ste. 140
Norman, OK 73072
Telephone: (405) 701-1863
Facsimile: (405) 310-5394
Email: odomb@odomsparks.com
Email: sparksj@odomsparks.com
Email: ridgewaym@odomsparks.com
Email: kinneyd@odomsparks.com
and
Charles C. Lifland*
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
clifland@omm.com

*\* denotes national counsel who will seek pro hac vice admission*

*Attorneys for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

_____

Kaspar Stoffelmayr*
BARTLIT BECK HERMAN
 PALENCHAR & SCOTT LLP
54 West Hubbard St., Ste. 300
Chicago, Illinois 60654
(312) 494-4400
kaspar.stoffelmayr@bartlit-beck.com

*\* denotes national counsel who will seek pro*

_____

J. Matthew Donohue*
Joseph L. Franco*
HOLLAND & KNIGHT LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300
Facsimile: 503.241.8014
matt.donohue@hklaw.com
joe.franco@hklaw.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Insys Therapeutics, Inc.*

_____

Larry D. Ottaway, OBA #6816
Amy Sherry Fischer, OBA #16651
Jordyn L. Cartmell, OBA #31043
FOLIART, HUFF, OTTAWAY, & BOTTOM
201 Robert S. Kerr Avenue, 12th Floor
Oklahoma City, OK 73102
Telephone:     +1.405.232.4633
Facsimile:     +1.405.232.3462
Larryottaway@oklahomacounsel.com
Amyfischer@oklahomacounsel.com
Jordyncartmell@oklahomacounsel.com
and
Christopher Lovrien*
Claire E. Castles*
Sarah G. Conway*
JONES DAY
555 S. Flower St., 50th Floor
Los Angeles, CA 90071
Telephone: (213) 243-2629
cjlovrien@jonesday.com
ccastles@jonesday.com
sgconway@jonesday.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Walmart Inc.*

_____

Joseph Knight, M.D.  (Pro-se)

*hac vice admission*

*Counsel for Walgreens Boots Alliance, Inc.*

_____

9751 West Mcrae Way
Peoria, Arizona, 85382-2236

_____

Ryan Sestack*
Bob Bragalone
GORDON REES SCULLY
MANSUKHANI, LLP
One Battery Park Plaza, 28th Floor
New York, New York 10004
Tel: (212) 269-5500
rsestack@grsm.com
bbragalone@grsm.com

*\* denotes national counsel who will seek pro
hac vice admission*

*Counsel for Perry Fine, M.D.; Scott Fishman,
M.D.; Lynn Webster, M.D.*

_____

Joseph Norwood
NORWOOD LAW FIRM, P.C.
Council Oak Center
1717 S. Cheyenne Ave.
Tulsa, OK  74119
Tel: (918) 582-6464
joe@norwoodlegal.com

*Attorneys for Roger Kinney, M.D.*

Joshua Livingston, DO (Pro-se)
10115 S. Sheridan Rd, Suite 6765
Tulsa, OK 74133

/s *Stuart D. Campbell*_____
Stuart D. Campbell